## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 1 C 9330 | **DATE** | 9/30/2004 |
| **CASE TITLE** | William Zajac vs. Chicago Area I.B. of T. et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: Motion for summary judgment [39-1] is granted.**

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

TSA courtroom deputy's initials

Date/time received in central Clerk's Office

SEP 3 0 2004 date docketed

docketing deputy initials

date mailed notice

mailing deputy initials

Document Number: 61

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
SEP 30 2004

WILLIAM ZAJAC, )
)
Plaintiff, ) No. 01 C 9330
)
v. )
) Judge Wayne R. Andersen
CHICAGO AREA I.B. OF T. PENSION FUND )
and CHICAGO TRUCK DRIVERS, HELPERS, ) Magistrate Judge Levin
AND WAREHOUSE WORKERS UNION )
(INDEPENDENT) PENSION FUND, )
)
Defendants. )

## MEMORANDUM, OPINION, AND ORDER

Defendant Chicago Area of I.B. of T. Pension Fund ("703 Fund") comes before the Court on its Motion for Summary Judgment on Counts I and II of the Plaintiff William Zajac's complaint. Count III of the Plaintiff's complaint is against another Defendant, Chicago Truck Drivers, Helpers, and Warehouse Workers Union (Independent) Pension Fund and is not addressed in this Memorandum, Opinion, and Order.

Counts I and II allege violations of the Employee Retirement Income and Security Act ("ERISA"). Specifically, Plaintiff alleges that the 703 Fund failed to comply with ERISA provisions 29 U.S.C. §§ 1053 and 1054, and disregarded the terms of the 703 Fund's pension plan by failing to give Plaintiff a "30-and-Out" pension benefit or to credit his service as an employee as he requested.

In the case at bar, the Court holds that the 30-and-Out Pensions requirements established by the Defendant did not violate ERISA or the Reciprocal Agreement. Further, the arbitrary and

capricious standard of review applies. Given this deferential standard, the issue is whether the Defendant 703 Fund had a reasonable basis for denying Plaintiff's request for a 30-and-Out pension. For the reasons set forth below, the Court has concluded that the Defendant's actions were not arbitrary and capricious. Therefore, the Defendant's Motion for Summary Judgment is granted.

## **BACKGROUND**

Defendant 703 Fund is a multiple-employer pension fund that provides retirement benefits for employees who are covered by various collective bargaining agreements ("CBAs") between employers and Local 703, an affiliate of the International Brotherhood of Teamsters (DF Rule 56.1 Statement, ¶ 3). William Zajac ("Plaintiff") has been a participant during combined periods for a total of thirty (30) years in the 703 Fund, as well as the CTDU Fund, and the Suburban Teamsters of Northern Illinois Welfare and Pension Fund ("Suburban Fund") (DF Rule 56.1 Statement, ¶ 5).

Benefit costs are financed by contributions paid by contributing employers to the 703 Fund, as these employers contribute on behalf of their eligible employees, and by income derived from the 703 Fund's investments. (DF Rule 56.1 Statement, ¶ 15). The funding levels and contributions necessary to sustain benefits are subject to "periodic actuarial valuations." (DF Rule 56.1 Statement, ¶ 16). Through the years since its adoption in 1959, the Local 703 Pension Plan has been subject to the terms and conditions of an Agreement and Declaration of Trust ("Trust Agreement"). This Agreement, among other things, gives the Trustees the power to administer and supervise the Trust, including the power to construe and interpret the provisions of the 703 Pension Plan.

2

Because it was (and still is) common for union members to transfer from one pension plan to another when members change employers, the 703 Fund and other pension funds sponsored by various local Teamster unions wanted to prevent union members from losing service credit when they changed jobs. Service credit is a key means by which a union member's eligibility for a particular type of pension is determined. In 1973, the 703 Fund Trustees executed a Reciprocal Agreement that required the signatory plans to recognize the service, known as "Reciprocal Service", of employees that was earned under other plans that were also signatories to the Reciprocal Agreement. (DF Rule 56.1 Statement, ¶¶ 23-24).

Historically throughout the 1970s and 1980s, the 703 Plan offered four types of pensions: 1) a Normal Pension (a pension benefit for which a participant was eligible at age 60 with five years of vesting); 2) an Early Pension (a pension benefit payable for participants between 55 and 60 years of age with fifteen years of service); 3) a Disability Pension (a pension payable by virtue of permanent disability to those participants with 10 years of vested service); and 4) a Deferred Vested Pension (a non-forfeitable pension benefit payable at normal retirement age to a person whose employment ended prior to normal retirement age). (DF Rule 56.1 Statement, ¶ 32). Reciprocal service with other local plans (providing they were parties to the Reciprocal Service) counted towards an employee's total length of service for the purpose of determining eligibility for these four types of pensions. (DF Rule 56.1 Statement, ¶ 26). Appendix A of the 703 Plan provides that when a participant works under another reciprocal plan that is party to the Reciprocal Agreement, he or she earns credits under that plan and these credits are called reciprocal credits for the purposes of the 703 Plan. (DF Rule 56.1 Statement, ¶ 30).

Beginning in 1987, the 703 Fund began providing a subsidized benefit known as a "30-year pension." This was a new benefit that was more favorable than the normal retirement benefit for retirees. However, in creating the 30-year pension, the Trustees determined that Appendix A rules regarding the recognition of reciprocal service credits under the Reciprocal Agreement would not apply to the 30-year pension, while the aforementioned Appendix A rules would continue to apply to the Normal, Early, Disability, and Deferred Vested Pensions. (DF Rule 56.1 Statement, ¶ 36; Murdoch Affidavit Exhibit 17). In the ensuing years, the Trustees made a series of similar benefit additions, including a "35 year pension" (which replaced the 30 year pension), "25 and Out pension" and "30 year and Out pension" (DF Rule 56.1 Statement, ¶¶ 37-51). In each of these new benefits, the Trustees determined that reciprocal service would not qualify towards earning a 30-year pension, a 25-and-Out pension, a 30-and-Out pension, etc. Rather, eligibility for these types of retirement benefits were restricted to employees with service specifically with employers during which the employer contributed to the 703 Fund.

On November 29, 1989, the Trustees adopted the "30-and-Out Pension" (the type of pension at issue before the court in this case), effective January 1, 1990, which provided a benefit payable as early as age 50 rather than age 60 (for the Normal Pension) or age 55 (for the Early Pension). (DF Rule 56.1 Statement, ¶ 37). The 30-and-Out pension required participants to have thirty (30) or more years of contributed service with the 703 Plan, with at least ½ year of Pension Service earned after January 1, 1989; further, the 30-and-Out Pension required that the participant's thirty years of service be continuous. "Continuous" means that the service not be interrupted by a break of two or more years. (DF Rule 56.1 Statement, ¶ 37). Notably, the 30-and-Out pension did not count reciprocal service toward eligibility requirements.

4

In the ensuing years, the Trustees, after reviewing funding requirements, liberalized the requirements for earning the 30-and-Out Pension by eliminating the age requirement in April 1990. (DF Rule 56.1 Statement, ¶ 39). On March 24, 1998, the Trustees considered the possibility of extending reciprocal service to 30-and-Out pensions, but determined restrictive conditions would be necessary to reduce financial exposure of the 703 Fund. (DF Rule 56.1 Statement, ¶¶ 60-62). The Trustees, however, eventually amended the 30-and-Out pension and announced the changes in a Notice to Participants of material modifications (dated May 1999) as follows:

> The eligibility rules for a "30 and Out" Pension have been changed. In the past, only the years for which employer contributions were received by the Plan were counted towards your eligibility for a "30 and Out Pension." Effective January 1, 1998, Reciprocal Service Credits may be used to establish eligibility for a "30 and Out" Pension. The new Plan provision allows participants who accumulate at least 15 years of pension service under this Pension Plan (with at least 6 out of the last 10 years under this Plan) to use up to 15 years of Reciprocal Service Credits in order to establish eligibility for a 30 and Out Pension. (Exhibit 28 to the Murdoch Affidavit; DF Rule 56.1 Statement ¶ 70).

Put more simply, the 703 Plan now recognized reciprocal service credit for the 30-and-Out Pension benefit if i) at least fifteen (15) years of service credits out the last thirty (30) were as a covered employee under the 703 Plan, and ii) six (6) out of the last ten (10) years of service were as a covered employee under the plan. (DF Rule 56.1 Statement ¶ 66; Murdoch Affidavit ¶ 31; DF Exhibit A-25).

Plaintiff worked under covered employment as defined by the 703 Plan from 1973 to 1988, accumulating fifteen years of credit towards a pension with the 703 Plan. (DF Rule 56.1 Statement ¶ 80-81). From 1988 until he applied to the 703 Fund for a 30-and-Out Pension in November 1999, he had not worked for covered employment as defined by the 703 Plan. (DF

5

Rule 56.1 Statement ¶ 81). However, during the 1989-1999 period, Zajac did earn 10.7 credits (by working for employers who contributed to the Suburban Plan, a party to the Reciprocal Agreement) for the purposes of Reciprocal Service. (DF Rule 56.1 Statement ¶ 83, 91). The 703 Fund rejected Plaintiff's application for a 30-and-Out Pension on December 15, 1999, and wrote him a letter, dated January 12, 2000, informing him that he was ineligible because he did not meet the requirement that six out of the last ten years of his service be earned with employers contributing to the 703 Plan. (DF Rule 56.1 Statement ¶ 92-93; DF Exhibit A-30). The letter notified Plaintiff of his right to appeal within 60 days of the letter, as well as his right to be represented by counsel (without cost to the Fund), and to "review pertinent plan documents and to submit issues and comments in writing." (DF Exhibit A-29). Plaintiff appealed this decision in April 2000, and the Trustees, after considering the appeal, notified the Plaintiff's attorney by letter on June 1, 2000 that the appeal had been denied for the same failure to meet this requirement. (DF Rule 56.1 Statement ¶ 94-95, DF Exhibit A-30 ).

## DISCUSSION

### I. Standard for Summary Judgment

A party is entitled to Summary Judgment "if the pleadings, depositions, answers to interrogatories, and admissions of fact, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party for summary judgment bears the initial burden of demonstrating an absence of evidence to support the position of the non-moving party. *Doe v. R.R. Donnelly & Sons Co.*, 42 F.3 439, 443 (7th Cir. 1994). In responding to a motion for summary judgment, the non-moving party must then set forth specific facts showing that there is

a genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). In analyzing whether summary judgment should be granted, the Court construes all facts and draws all reasonable inferences in the light most favorable to the non-moving party. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560 (7th Cir. 1996).

## II. Issues Narrowed in Light of Defendant's and Plaintiff's Briefs

In the Plaintiff's Response to Defendant 703 Fund's Motion for Summary Judgment, the Plaintiff concedes that there are no violations of 28 U.S.C. §§ 1053 (ERISA vesting) or 1054 (ERISA back-loading) present in this case, but that nonetheless, a Federal question remains in regards to 29 U.S.C. § 1132(a)(1)(B). Thus, the remaining questions are A) whether Defendant 703 Fund's requirements for a 30-and-Out Pension violated the Reciprocal Agreement, and B) whether the 703 Fund's denial of the 30-and-Out Pension was lawful under ERISA.

### A. The 703 Fund's Requirements for a 30-and-Out Pension

The Plaintiff maintains that the 30-and-Out Pension is in fact a type of Early Retirement Pension and is therefore governed by the terms of the Reciprocal Agreement. (Pl. Br. 6-8). The Plaintiff argues that in turn, the "six out of ten year" requirement to receive a 30-and-Out Pension violates the Reciprocal Agreement by delivering a benefit that is less than promised. (Pl. Br. 8-9). The Defendant asserts that the 30-and-Out Pension was not subject to the terms of the Reciprocal Agreement.

Defendant's primary evidentiary basis for its position is a 1973 letter from Louis Peick, the President of Joint Council No. 25 of the International Brotherhood of Teamsters ("Peick Letter) (DF Rule 56.1 Statement, ¶¶ 19-22; DF Exhibit A-5). The letter was sent as a proposal to

7

various Teamster local unions, including Local 703, to encourage them to enter the Reciprocal

Agreement. (DF Rule 56.1 Statement, ¶ 20; DF Exhibit A-5). The Defendant states that this

letter shows that the Reciprocal Agreement was not intended to bind locals (including 703) in

such a manner that any retirement benefit added in the future (such as the 30-and-Out pension)

had to comply with the Reciprocal Agreement. Rather, the Defendant maintains that the

Reciprocal Agreement only applied to Normal Retirement, Early Retirement, and Disability

Pensions. (DF Reply Br. at 14). The letter states:

> The purpose of the Joint Council Reciprocal Pension Plan is to provide a vehicle whereby employees who transfer from one pension plan to another within the Joint Council and who are not able to obtain a regular normal pension would, under certain circumstances, be able to obtain a reciprocal pension.
>
> You should first note that by participating in the Joint Council Reciprocal Pension Plan your board of trustees will continue act as they did in the past, and your own rules or provisions related to the granting of past service credits, breaks in service, and eligibility will continue to be applied.
>
> ******
>
> We regard the Joint Council No. 25 Reciprocal Pension as an important milestone in that it still preserves the authority of the local trustees to establish their own rules while it credits under certain circumstances time spent in each local for the purpose of obtaining a reciprocal pension. (DF Exhibit A-5).

Defendant further describes the 30-and-Out Pension as a "retirement-type subsidy."

"This characterization is important because if true, the [pension] is excluded from full ERISA

protection and the Plan may impose conditions on participants for eligibility." *Helms v. Local

705 International Brotherhood of Teamsters Pension Plan*, 1999 WL 96520 (N.D.Ill.). "The

terms 'early retirement benefit' and "retirement-type subsidy" are not defined in the statute or in

the regulations. In the absence of Congressional guidance on the issue, courts generally have

8

defined early retirement benefits as the retirement benefits that would begin at normal retirement age, actuarially reduced to reflect its commencement at an earlier date." *Arena v. ABB Power T&D Co.*, 2004 U.S. Dist. LEXIS 6522 (D.Ind., 2004). *See, e.g. Heinz v. Central Laborer's Pension Fund*, 303 F.3d 802, 810 (7th Cir. 2002); *Bellas v. CBS, Inc.*, 221 F.3d 51, 538 (3d Cir. 2000).

"Retirement-type subsidy", however, has been more elusive. "The statute refers to a subsidy 'as defined in the regulations.' Unfortunately there is no regulation which defines the term. We are on our own." *Arndt v. Sec. Bank S.S.B. Employees' Pension Plan*, 182 F.3d 538, 542 (7th Cir. 1999). The Senate Report in the Retirement Equity Act (REA) did, however, define benefit subsidy as, "The excess of the value of a benefit over the actuarial equivalent of the normal retirement benefit." S. Rep. No. 98-575, at 28 (1984). Consistent with the Senate Report, several courts have defined a retirement-type subsidy as the excess value over the actuarial equivalent of the normal retirement benefit. *See, e.g., Bellas*, 221 F.3d at 533; *Costantino v. TRW, Inc.*, 13 F.3d 969, 977-78 (6th Cir. 1994).

The Court finds that 30-and-Out Pension at issue is a retirement-type subsidy. Although case law addressing retirement-type subsidies is sparse, *Ashenbaugh*, 854 F.2d 1515, addressed a challenge to a company's denial of a "30-year Benefit" to employees who failed to meet a thirty-year service requirement. *Id.* at 1519-20. Like the benefit at issue in *Ashenbaugh*, the 30-and-Out Pension in the present case "included amounts over the actuarial equivalent of a normal retirement benefit and thus was a subsidy." *Helms*, 1999 WL 96520, at 7. (N.D.Ill.); (DF Rule 56.1 Statement, ¶¶ 108-110, 112). As such, and coupled with the contents of the Peick letter, the

30-and-Out Pension was not one of the benefits to which the terms of the Reciprocal Agreement and the requirements of ERISA apply.

## B. The 703 Fund's Denial of the Plaintiff's Request for a 30-and-Out Pension

### 1. The Arbitrary and Capricious Standard Applies

Even were the Court to hold that the 30-and-Out Pension was not a retirement-type subsidy, thus activating the protections of ERISA, the Defendant is entitled to summary judgment in the present case. Under ERISA, the courts review benefit determinations *de novo* unless the plan trustees have been given discretion to determine benefit eligibility, in which case the Court reviews the trustees' actions under the arbitrary and capricious standard of review. *Trombetta v. Cragin Federal Bank for Savings Employee Stock Ownership Plan*, 102 F.3d 1435, 1437 (7th Cir. 1997).

*Trombetta* is consistent with other cases that followed in the wake of the Supreme Court's decision in *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989). In *Firestone*, the Court concluded, "Consistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretional authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115. *See also Militello v. Central States, Southeast and Southwest Areas Pension Fund*, 360 F.3d 681, 685 (7th Cir. 2004); *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 773 (7th Cir. 2003). Since *Firestone*, new employee benefit plans have been created (or old ones amended) to include "appropriate boilerplate language giving plan administrators discretion to interpret the plan." *See*

10

Paul J. Schneider & Barbara W. Freedman, ERISA: A Comprehensive Guide § 8.03[H] (2d ed. 2003) (discussing post-*Firestone* developments in the standard of review for benefit denials).

The 703 Plan was restated most recently on February 1, 2002. (DF Rule 56.1 Statement ¶ 8). Prior to the 2002 restatement, the 703 Plan had been effective January 1, 1989 and further restated through January 1, 1995. (Murdoch Affidavit ¶ 7). Article 9.01 of the 2002 and 1995 versions of the 703 Plan in relevant part [sic] provide; "The Trustees shall have the responsibility for the administration of the Plan and the Fund and to amend or terminate the Plan, in whole or in part." (DF Rule 56.1 Statement ¶ 12; DF Exhibits A-2, A-3). Additionally, Article 9.4 of the 1995 and 2002 versions of the 703 Plan in relevant part provides:

> The Trustees shall have such duties and powers as may be necessary to discharge their duties hereunder, including, but not by way of limitation, the following:
> (a) to construe and interpret the Plan, decide all questions of eligibility and determine the amount, manner, and time of payment of any benefits hereunder.
> (DF Exhibits A-2, A-3).

Based on the above, the proper standard by which to review the Defendant's actions is the "arbitrary and capricious" standard. While certain language ensures deferential review, precise wording is not required. *See Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir. 2000) (noting that "the courts have consistently held that there are no 'magic words' determining the scope of judicial review of decisions to deny benefits"). However, the Seventh Circuit provides guidance. *See Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 408 (7th Cir. 2004) (quoting the defendant insurance company plan language, "In making any benefits determination under the Policy, the Company shall have the discretionary authority both to determine your eligibility for benefits and to construe the terms of the Policy" and concluding, "It is hard to be clearer. This sort of language leads to deferential judicial review.").

11

The language in the 703 Plan is consistent with that in *Leipzig*. The 703 Plan provision reserving the Trustees' power to "construe and interpret the Plan" is unambiguous in its grant of discretion to the Trustees. Thus, this Court holds that the arbitrary and capricious standard applies in the present case.

### 2. The 703 Fund's Denial of a 30-and-Out Pension Was Reasonable

Under the arbitrary and capricious standard, the question before the Court is whether the plan's decision to deny benefits was reasonable. *Hess v. Hartford Life & Accident Insurance Co.*, 274 F.3d 456, 461 (7th Cir. 2001). The Court will uphold a plan's decision if the plan trustees base their decision on relevant factors, make informed judgments, articulate an explanation, and reasonably interpret the plan documents. *Exobom v. Central States, Southeast and Southwest Areas Health and Welfare Fund*, 900 F.2d 1138, 1142-43 (7th Cir. 1990).

In the present case, the 703 Fund acted reasonably when it denied the Plaintiff's request for a 30-and-Out Pension. "The trustees have an obligation to maintain the actuarial soundness of their pension plan and not to grant pensions that violate the terms of the Plan. Granting pensions in violation of the Plan could subject the trustees to liability." *Bagsby v. Central States, Southeast and Southwest Areas Pension Fund*, 162 F.3d 424, 428-29 (6th Cir. 1998). *See also* ERISA § 406(a)(1)(D), 29 U.S.C.A. 1104(a)(1)(D); *Patterson v. Shumate*, 504 U.S 753, 760 (1992) ("A plan participant, beneficiary, or fiduciary, or the Secretary of Labor may file a civil action to 'enjoin any act or practice' which violates ERISA or the terms of the plan.").

In a November 29, 1989 meeting, the Trustees amended the 703 Plan to provide a 30-and-Out Pension. (Murdoch Affidavit ¶ 21). During this meeting, the Trustees consulted with their

12

actuary, Mr. Alex Selwood, as well as the Board of Trustees' counsel, Mr. Barry G. Collins. (DF Exhibit A-18). The 30-and-Out Pension became available for participants age fifty (50) and older with thirty (30) years of contributed service with the 703 Plan. (DF Exhibit A-18). In 1994, the Trustees concluded that Plan assets and funding allowed for additional enhancements to the 30-and-Out Pension benefit. (DF Rule 56.1 Statement ¶ 48). At a March 24, 1998 meeting, the Trustees discussed allowing reciprocal service credits in determining eligibility for 30-and-Out Pensions. (Murdoch Affidavit ¶ 29-31). The Fund's actuary, however, advised the Trustees that it was impossible to compute the actuarial costs of doing this because of the lack of information on the number of former participants who might qualify. (DF Rule 56.1 Statement ¶ 62). The actuary did suggest that financial exposure could be limited by setting conditions for the reciprocal service credits in determining eligibility for a 30-and- Out Pension. (DF Rule 56.1 Statement ¶ 62; Murdoch Affidavit ¶ 30). The Trustees then amended the 703 Plan, effective January 1, 1998, to recognize reciprocal service credit for the 30-and-Out Pension benefit if i) at least fifteen (15) years of service credits out the last thirty (30) were as a covered employee under the 703 Plan, and ii) six (6) out of the last ten (10) years of service were as a covered employee under the plan. (DF Rule 56.1 Statement ¶ 66; Murdoch Affidavit ¶ 31; DF Exhibit A-25).

As noted above, the Trustees consulted with their actuarial services throughout the years that the 30-and-Out Pension evolved in its various forms. They engaged in discussion about the propriety and financial soundness of liberalizing the 30-and-Out Pension benefit. The Trustees had an obligation to maintain the actuarial soundness of the 703 Fund, and as such, cannot carte blanche distribute benefits to persons who are not eligible for them. *See* ERISA § 406(a)(1)(D), 29 U.S.C.A. 1104(a)(1)(D) (outlining fiduciary duties in ERISA). Here, the Trustees based their

13

decision on relevant factors (the Plan rules, the availability of other pensions for the Plaintiff), made informed judgments (based on their consultations with their actuaries in setting conditions for pension eligibility that ensure financial soundness), articulated an explanation (via letters to the Plaintiff and the appeals process), and reasonably interpreted the plan documents. *See Exobom*, 900 F.2d at 1142-43 (discussing the determination of reasonableness on the part of plan administrators who deny benefits to a participant). The Court concludes that the Defendant acted reasonably in denying the Plaintiff a 30-and-Out Pension.

## CONCLUSION

There is no evidence to support Plaintiff's claim the 703 Fund wrongly denied the Plaintiff's request for a 30-and-Out Pension. The 30-and-Out Pension's requirements– requirements that the Plaintiff failed to meet– did not violate the Reciprocal Agreement or ERISA. Even under ERISA, the 703 Fund's denial of benefits to the Plaintiff was not arbitrary and capricious, and the Defendant acted reasonably in denying the request. For the foregoing reasons, the Defendant 703 Fund's Motion for Summary Judgment (#39-1) is granted.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: September 30, 2004