# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 1 C 9330 | **DATE** | 10/22/2004 |
| **CASE TITLE** | William Zajac vs. Chicago Area I.B. of T. Pension Fund | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter MEMORANDUM, OPINION AND ORDER: Defendant CTDU Fund's motion for summary judgment [26-1] is granted. This is a final and appealable order, terminating the case.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 2 6 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | 62 |
| | Copy to judge/magistrate judge. | | | |
| | TSA courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WILLIAM ZAJAC,                                    )
                                                  )
                        Plaintiff,                )   No. 01 C 9330
                                                  )
        v.                                        )
                                                  )   Judge Wayne R. Andersen
CHICAGO AREA I.B. OF T. PENSION FUND              )
and CHICAGO TRUCK DRIVERS, HELPERS,               )   Magistrate Judge Levin
AND WAREHOUSE WORKERS UNION                       )
(INDEPENDENT) PENSION FUND,                       )
                                                  )
                        Defendants.               )



## MEMORANDUM, OPINION, AND ORDER

Defendant Chicago Truck Drivers, Helpers, and Warehouse Workers Union (Independent) Pension Fund ("CTDU Fund") comes before the Court on its Motion for Summary Judgment on Count III of the Plaintiff William Zajac's complaint. Counts I and II of the Plaintiff's complaint are against another Defendant, Chicago Area of I.B. of T. Pension Fund ("703 Fund") and are not addressed in this Memorandum, Opinion, and Order. The Court granted the 703 Fund's Motion for Summary Judgment (#39-1) on Counts I and II in this case on September 30, 2004.

Count III is asserted solely against the CTDU Fund and alleges violations of the Employee Retirement Income and Security Act ("ERISA"). Specifically, Plaintiff alleges that the CTDU Fund failed to comply with ERISA provisions 29 U.S.C. §§ 1132(a)(1)(B) when it declined to participate in a "30-and-Out" pension benefit for the Plaintiff, did not provide a Partial Pension at the payment rate he requested, denied his first application for a Partial Pension,

and failed to pay interest for pension benefits the Plaintiff alleges are due him. Plaintiff also alleges that he is a member of a class injured by the CTDU Fund's actions, and seeks to clarify his and the class's rights under the terms of the CTDU Fund.

For the reasons set forth below, the Court has concluded that the Defendant CTDU's actions were lawful. Therefore, the CTDU Fund's Motion for Summary Judgment is granted.

## BACKGROUND

Defendant CTDU Fund is a multiple-employer employee benefit plan ("Plan") that provides pension and disability benefits for employees who are covered by various collective bargaining agreements ("CBAs") between employers and the Chicago, Truck Drivers, Helpers, and Warehouse Workers Union (Independent) ("Union").

Benefit costs are financed by contributions paid by the CTDU Fund's contributing employers, who contribute on behalf of their eligible employees, and by income derived from the CTDU Fund's investments. The funding levels and contributions necessary to sustain benefits are subject to actuarial valuations analysis. The CTDU Fund is party to the "Restated Agreement and Declaration of Trust." ("Trust Agreement"). This Agreement, among other things, articulates the powers and duties of the Trustees to administer and supervise the Trust, including the power to construe and interpret the provisions of the CTDU Plan. In relevant part, it provides as follows: "The Trustees, by majority action, shall have the sole power to construe, interpret, and apply the provisions of this restated Agreement and the terms and regulations of the Plan, and to determine eligibility for benefits." (Trust Agreement Article III, § 17).

Service credit is a key means by which a union member's eligibility for a particular type of pension is determined. Because it is common for union members to transfer from one

pension plan to another when members change employers, the CTDU Fund and other pension funds sponsored by various local Teamster unions wanted to prevent union members from losing service credit when they changed jobs. On September 4, 1973, the CTDU Fund Trustees executed the "Joint Council No. 25 Reciprocal Agreement for Teamsters Pension Funds" ("Reciprocal Agreement") that required the signatory plans, including CTDU, to recognize the service, known as "Reciprocal Service," of employees that was earned under other plans that were signatories to the Reciprocal Agreement. The Reciprocal Agreement's stated purpose is as follows: "Purpose. Reciprocal Pensions are provided under this Plan for employees who would otherwise lack sufficient service credit to be eligible for any pension because their years of employment would be less than the full amount because of such division of employment." (Fenner affidavit ¶18). The CTDU Plan's language also calls a Reciprocal Pension a "Partial Pension."

Other relevant signatories of the Reciprocal Agreement include the Defendant in Counts I and II of this case, Chicago Area I.B. of T. Pension Trust Fund ("703 Fund"), as well as non-party Suburban Teamsters of Northern Illinois Welfare and Pension Fund ("Suburban Plan"). A pension fund– including Count III Defendant CTDU Fund– that is a signatory to the Reciprocal Agreement, is referred to as a "Reciprocal Plan." During 1968 through 1999, Plaintiff was a participant and earned pension credits during combined periods for a total of thirty (30) years in the CTDU Fund, as well as the 703 Fund, and the Suburban Fund. Plaintiff earned 4.3 pension credits with Defendant CTD Fund between November 4, 1968 and April 20, 1973. From 1973 to 1988, Plaintiff earned 15.0 credits with the 703 Fund. From 1989 to 1999, Plaintiff earned 10.7 credits with the Suburban Plan, bringing Plaintiff to a total of 30.0 pension credits between

CTDU Fund, 703 Fund, and the Suburban Plan. The 4.3 credits Plaintiff earned with the CTDU Fund were insufficient to make him eligible for a pension from just the CTDU Fund itself, and the 1972, pre-ERISA plan under which Plaintiff earned these 4.3 credits requires at least twenty (20) years of credited employment to earn a pension.

A "30-and-Out Pension" is a pension that is more favorable than the normal retirement benefit for retirees because it includes amounts over the actuarial equivalent of a normal retirement benefit and is not reduced for the participant's age. Though not expressly labeled as a 30-and-Out Pension, the CTDU Plan provides a 30-and-Out Pension for participants who earn "30 or more Pension Benefit Credits" with the CTDU Fund. (DF Reply Br. at 9; DF Exhibit B-3, §3.3(b)). In November 1999, Plaintiff applied to the Suburban Plan for a 30-and-Out Reciprocal Pension, effective January 1, 2000 based on his combined thirty years of service with the CTDU Fund, the 703 Fund, and the Suburban Plan. These three plans communicated with one another throughout November 1999 in verifying and confirming the service credits that Plaintiff had earned with each of them for the purposes of evaluating Plaintiff's application. To earn a 30-and-Out reciprocal pension, the 703 Fund required participants to have at least six (6) out of the last ten (10) years of service with 703. On December 16, 1999, 703 advised that it would not participate with the CTDU Plan and the Suburban Plan in a 30-and-Out Pension for Plaintiff because his last 10.7 years of service had been with the Suburban Plan rather than 703. The 703 Fund's decision to do so was found not to have violated ERISA or the Reciprocal Plan when this Court granted the 703's Motion for Summary Judgment (#39-1) on Counts I and II in this case on September 30, 2004.

On November 12, 1999, Plaintiff called the CTDU Fund and verbally applied over the telephone for a Partial Pension, effective January 1, 2000. This became relevant because the CTDU Trustees also determined that, because the 703 refused to participate in a 30-and-Out Reciprocal Pension, the Plaintiff incurred a break in service and, as a consequence, did not qualify for *any* type of pension from the CTDU Fund. (DF Rule 56.1 Statement, ¶ 79) (emphasis added). On January 4, 2000, the Defendant notified Plaintiff via letter that his request for a Partial Pension had been denied and stated in the letter that the Plaintiff had the right to appeal the Fund's decision within sixty (60) days. Plaintiff did not appeal within sixty days.

Then, in November 2001, Plaintiff re-applied to the Suburban Plan for a 30-and-Out Pension from the Suburban Plan, the 703 Fund, and the CTDU Fund, effective December 1, 2001. Plaintiff, on December 3, 2001, then applied to the CTDU Fund for a Partial/Reciprocal Pension to be paid by CTDU, 703, and the Suburban Plan, effective January 1, 2002. This was Plaintiff's second such application (the first being November 12, 1999, effective January 1, 2000). Three days after this second application, on December 6, 2001, Plaintiff filed suit against all three funds. Nonetheless, at a February 22, 2002 meeting, the CTDU Trustees considered Plaintiff's latest application for a Partial Pension, and determined that Plaintiff qualified for a Partial Pension with CTDU, 703, and Suburban. Then, on February 26, 2002, the Suburban Plan inquired whether the CTDU Fund would participate in a three-way Reciprocal Pension for Plaintiff, based on the thirty (30) combined credits with the three plans. On February 27, 2002, CTDU replied to the Suburban Plan that it would do so. That same day, CTDU informed Plaintiff that he had been found eligible for a Partial Pension and that he would be sent a written

application, which he would have to fill out since his previous verbal application had been denied.

On March 6, 2002, the CTDU Fund advised Plaintiff that the Trustees had approved a Partial Pension in the amount of $29.00 per month, effective January 1, 2002. The $29.00 amount was determined by dividing the total number of service credits with CTDU Fund (4.3) by the total number of service credits his entire career (30), then multiplying the resulting dividend by $200.00 (the monthly benefit amount of the 1972 CTDU Plan which was in effect in 1973 when Plaintiff last worked for employers who contributed to the CTDU Fund on his behalf). In sum, (4.3 ÷ 30) x $200.00 = $28.66, which was rounded up to $29.00 per month. As the calculation demonstrates, this $29.00 per month was not Plaintiff's entire pension from the three unions, but rather the portion to be paid by the CTDU Fund for Plaintiff's 4.3 years of service. The CTDU Fund wrote Plaintiff on March 6, 2002 to advise him that in accordance with Federal law and the Plan's terms, this pension benefit would be paid in a single lump sum of the actuarial present value of $4,652.00. (DF Exhibit B-19; ERISA § 203(e)(1) and 1053(e)(1)).

This March 6 letter was enclosed with a rollover election form allowing Plaintiff to avoid paying a 20% federal income tax if he rolled this lump sum into an Individual Retirement Account ("IRA"), a waiver providing that Plaintiff waived his right to any future pension benefits by accepting the lump sum payment, a signature card, and a Retirement Application. In April 2002, Plaintiff returned to the CTDU Fund the waiver, retirement declaration form, and rollover election form, each signed by the Plaintiff, William Zajac. On May 1, 2002, the CTDU Fund issued a check for $4,653.00 to "One Group Mutual Funds" for the benefit of Plaintiff, which was then cashed and deposited into Plaintiff's account.

The March 6 letter had advised Plaintiff of his right to appeal within 60 days if he disagreed with the amount of the $29.00 monthly benefit amount or any other aspect of the Trustees' decision; Plaintiff did not appeal within this 60 days. On March 18, 2002, Plaintiff filed an Amended Complaint in this current litigation against the CTDU Fund. In an effort to resolve the litigation, the Trustees agreed to allow Plaintiff to file an appeal beyond the 60 day period provided in the Plan, which Plaintiff did via letter from his attorney on June 4, 2002. (DF Exhibit B-28)

At a September 19, 2002 meeting, the Trustees considered Plaintiff's appeal in light of the points raised in the Amended Complaint of March 18, 2002. Plaintiff maintained in his appeal that since he had left employment with the CTDU Fund on April 20, 1973, the CTDU Fund had increased the "rate multiplier" for calculating pension benefits, an act which violated ERISA and the Reciprocal Agreement. Specifically, according to Plaintiff, the CTDU Fund should have used the rate in effect when Plaintiff left covered employment under the Reciprocal Plan (namely, when he left the Suburban Plan) rather than the rate in effect when he left employment under the CTDU Fund in 1973 when the 1972 Plan was in effect. Put simply, Plaintiff was appealing the $200.00 multiplier as too low. A higher multiplier would have necessarily resulted in a larger monthly benefit to the Plaintiff.

## DISCUSSION

### I. Standard for Summary Judgment

A party is entitled to Summary Judgment "if the pleadings, depositions, answers to interrogatories, and admissions of fact, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c). The moving party for summary judgment bears the initial burden of demonstrating an absence of evidence to support the position of the non-moving party. *Doe v. R.R. Donnelly & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). In responding to a motion for summary judgment, the non-moving party must then set forth specific facts showing that there is a genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). In analyzing whether summary judgment should be granted, the Court construes all facts and draws all reasonable inferences in the light most favorable to the non-moving party. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560 (7th Cir. 1996).

## II.   Issues Before the Court

In the present case, the issues are whether the CTDU's actions were unlawful when the CTDU Fund:

> A) declined to participate in a 30-and-Out Pension for the Plaintiff despite the terms of the Reciprocal Agreement;
>
> B) denied Plaintiff's *first* application for a Partial Pension (made on November 12, 1999, to be effective January 1, 2001) and the Plaintiff failed to appeal;
>
> C) provided a Partial Pension (following the Plaintiff's *second* application on December 3, 2001, to be effective January 1, 2002) to the Plaintiff of $29.00 per month using the rate multiplier in effect under the 1972 Plan when the Plaintiff left covered employment under the CTDU Fund in 1973;
>
> D) did not include interest for the years 2000 and 2001 in its pension payment to Plaintiff.

### A.   The 30-and-Out Pension

The 30-and-Out Pension is what is known as a "retirement-type subsidy." "This characterization is important because if true, the [pension] is excluded from full ERISA

protection and the Plan may impose conditions on participants for eligibility." *Helms v. Local 705 International Brotherhood of Teamsters Pension Plan*, 1999 WL 96520 (N.D.Ill.). "The terms 'early retirement benefit' and 'retirement-type subsidy' are not defined in the statute or in the regulations. In the absence of Congressional guidance on the issue, courts generally have defined early retirement benefits as the retirement benefits that would begin at normal retirement age, actuarially reduced to reflect its commencement at an earlier date." *Arena v. ABB Power T&D Co.*, 2004 U.S. Dist. LEXIS 6522 (S.D.Ind. 2004). *See, e.g., Heinz v. Central Laborer's Pension Fund*, 303 F.3d 802, 810 (7th Cir. 2002); *Bellas v. CBS, Inc.*, 221 F.3d 51, 538 (3d Cir. 2000).

"Retirement-type subsidy", however, has been more elusive. "The statute refers to a subsidy 'as defined in the regulations.' Unfortunately there is no regulation which defines the term. We are on our own." *Arndt v. Sec. Bank S.S.B. Employees' Pension Plan*, 182 F.3d 538, 542 (7th Cir. 1999). The Senate Report in the Retirement Equity Act (REA) did, however, define benefit subsidy as, "[t]he excess of the value of a benefit over the actuarial equivalent of the normal retirement benefit." S. Rep. No. 98-575, at 28 (1984). Consistent with the Senate Report, several courts have defined a retirement-type subsidy as the excess value over the actuarial equivalent of the normal retirement benefit. *See, e.g., Bellas*, 221 F.3d at 533; *Costantino v. TRW, Inc.*, 13 F.3d 969, 977-78 (6th Cir. 1994).

We find that the 30-and-Out Pension at issue is a retirement-type subsidy. Although case law addressing retirement-type subsidies is sparse, *Ashenbaugh v. Crucible, Inc., 1975 Salaried Retirement Plan*, 854 F.2d 1516 (3d Cir. 1988), addressed a challenge to a company's denial of a "30-year Benefit" to employees who failed to meet a thirty-year service requirement. *Id.* at 1519-

20. Like the benefit at issue in *Ashenbaugh*, the 30-and-Out Pension in the present case "included amounts over the actuarial equivalent of a normal retirement benefit and thus was a subsidy." *Helms*, 1999 WL 96520, at 7 (N.D.Ill.). In the present case, Counts I and II Defendant 703 Fund declined to participate in a 30-and-Out Pension because Plaintiff did not meet its eligibility rules. Plaintiff Zajac had only 4.3 years of service under the CTDU Fund, well short of the 30 years required for a equivalent of the 30-and-Out Pension under the CTDU Plan. Without 703 Fund's participation, a 30-and-Out Pension was not possible. As such, CTDU Fund did not violate ERISA or the Reciprocal Agreement when it declined to participate in a 30-and-Out Pension on its own or with the other funds as a reciprocal pension.

**1. The Arbitrary and Capricious Standard Applies**

Even were the Court to hold that the 30-and-Out Pension was not a retirement-type subsidy, thus activating the protections of ERISA, the Defendant is entitled to summary judgment in the present case. Under ERISA, the courts review benefit determinations *de novo* unless the plan trustees have been given discretion to determine benefit eligibility, in which case the Court reviews the trustees' actions under the arbitrary and capricious standard of review. *Trombetta v. Cragin Federal Bank for Savings Employee Stock Ownership Plan*, 102 F.3d 1435, 1437 (7th Cir. 1997).

*Trombetta* is consistent with other cases that followed in the wake of the Supreme Court's decision in *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989). In *Firestone*, the Court concluded, "Consistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretional authority to determine eligibility for

benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115. *See also Militello v. Central States, Southeast and Southwest Areas Pension Fund*, 360 F.3d 681, 685 (7th Cir. 2004); *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 773 (7th Cir. 2003). Since *Firestone*, new employee benefit plans have been created (or old ones amended) to include "appropriate boilerplate language giving plan administrators discretion to interpret the plan." *See* Paul J. Schneider & Barbara W. Freedman, ERISA: A Comprehensive Guide § 8.03[H] (2d ed. 2003) (discussing post-*Firestone* developments in the standard of review for benefit denials).

In relevant part, the CTDU Trust Agreement provides as follows: "The Trustees, by majority action, shall have the sole power to construe, interpret, and apply the provisions of this restated Agreement and the terms and regulations of the Plan, and to determine eligibility for benefits." (Trust Agreement Article III, § 17).

Based on the above language, the proper standard by which to review the Defendant's actions is the "arbitrary and capricious" standard. While certain language ensures deferential review, precise wording is not required. *See Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir. 2000) (noting that "the courts have consistently held that there are no 'magic words' determining the scope of judicial review of decisions to deny benefits"). However, the Seventh Circuit provides guidance. *See Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 408 (7th Cir. 2004) (quoting the defendant insurance company plan language, "In making any benefits determination under the Policy, the Company shall have the discretionary authority both to determine your eligibility for benefits and to construe the terms of the Policy" and concluding, "It is hard to be clearer. This sort of language leads to deferential judicial review.").

The language in the CTDU Plan is consistent with that in *Leipzig*. The CTDU Plan provision reserving the Trustees' power to "construe, interpret, and apply the provisions of this restated Agreement" is unambiguous in its grant of discretion to the Trustees. Thus, this Court holds that the arbitrary and capricious standard applies in the present case.

### 2. The CTDU Fund's Denial of a 30-and-Out Pension Was Reasonable

Under the arbitrary and capricious standard, the question before the Court is whether the plan's decision to deny benefits was reasonable. *Hess v. Hartford Life & Accident Insurance Co.*, 274 F.3d 456, 461 (7th Cir. 2001). The Court will uphold a plan's decision if the plan trustees base their decision on relevant factors, make informed judgments, articulate an explanation, and reasonably interpret the plan documents. *Exobom v. Central States, Southeast and Southwest Areas Health and Welfare Fund*, 900 F.2d 1138, 1142-43 (7th Cir. 1990).

In the present case, the CTDU Fund acted reasonably when it denied the Plaintiff's request for a 30-and-Out Pension. "The trustees have an obligation to maintain the actuarial soundness of their pension plan and not to grant pensions that violate the terms of the Plan. Granting pensions in violation of the Plan could subject the trustees to liability." *Bagsby v. Central States, Southeast and Southwest Areas Pension Fund*, 162 F.3d 424, 428-29 (6th Cir. 1998). *See also* ERISA § 406(a)(1)(D), 29 U.S.C.A. 1104(a)(1)(D); *Patterson v. Shumate*, 504 U.S 753, 760 (1992) ("A plan participant, beneficiary, or fiduciary, or the Secretary of Labor may file a civil action to 'enjoin any act or practice' which violates ERISA or the terms of the plan.").

The Trustees had an obligation to maintain the actuarial soundness of the CTDU Fund, and as such, cannot carte blanche distribute benefits to persons who are not eligible for them.

*See* ERISA § 406(a)(1)(D), 29 U.S.C.A. 1104(a)(1)(D) (outlining fiduciary duties in ERISA). For CTDU Fund to participate in a 30-and-Out Pension for the Plaintiff, either: 1) CTDU, 703, and the Suburban Plan would have had to pay such a pension as a *Reciprocal Pension*; or 2) CTDU Fund would have had to participate *by itself*. Plaintiff was not entitled to this latter option because he had earned only 4.3, rather than 30, years of service with CTDU. As for the reciprocal option, as stated previously, the 703 Fund, and later, the CTDU Fund, lawfully declined to participate in a 30-and -Out Pension on a reciprocal basis.

Here, the CTDU Fund Trustees based their decision on relevant factors (the Plan rules requiring 30 years of service with the CTDU Fund as well as 703 Fund's decision not to participate), made informed judgments (based on the financial consequences to the CTDU Fund if they paid a pension based on 30 years of service when there were only 4.3 years of employer contributions), articulated an explanation (via letters to the Plaintiff and the appeals process), and reasonably interpreted the plan documents. *See Exobom*, 900 F.2d at 1142-43 (discussing the determination of reasonableness on the part of plan administrators who deny benefits to a participant). The Court concludes that the Defendant acted reasonably in denying the Plaintiff a 30-and-Out Pension.

**B.    The CTDU's Denial of the First Application and the Plaintiff's Failure to Appeal**

It is undisputed that the CTDU denied the Plaintiff's request for a Partial Pension after his first application on November 12, 1999 and wrote to inform the Plaintiff of such on January 4, 2000 based on a determination by the CTDU Fund that the Plaintiff had incurred a break in service. However, Plaintiff did not appeal this decision. Plaintiff maintains that he did in fact appeal, pointing to a letter from Plaintiff's counsel. This letter, however, dated June 4, 2002,

13

reads, "I am appealing the decision of the CTDU Fund rendered March 6, 2002..." (DF Exhibit B-28). This plainly and unambiguously on its face was an appeal of the *second* application to the CTDU Fund, not the application from *November 12, 1999*.

ERISA requires pension plans to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." ERISA § 503; 29 U.S.C. § 1133. The CTDU Plan provides an appeals process consistent with this provision, allowing claimants to appeal a Trustee decision within 60 days. While a party is not required to exhaust administrative remedies to bring suit in Federal court, "it has long been recognized in this Circuit that the intent of Congress is best effectuated by granting district courts discretion to require administrative exhaustion." *Gallegos v. Mount Sinai Medical Center*, 201 F.3d 803, 807-808 (7th Cir. 2000). This policy minimizes frivolous lawsuits, promotes alternative dispute resolution, and decreases costs and time to settle claims. *Id.* at 808. Exhaustion "is necessary to keep from turning every ERISA action, literally, into a federal case." *Denton v. First Nat'l Bank of Waco*, 765 F.2d 1295, 1300 (5th Cir. 1985).

A plaintiff is excused from seeking administrative remedy only if: 1) there is no administrative remedy provided; or 2) pursuing a provided remedy would be futile. *Gallegos*, 201 F.3d at 808. In the present case, it is undisputed that there was an appeals process and that this Plaintiff was informed of it. Therefore, we are left with the question of whether pursuing a remedy would have been futile. "In order to come under the futility exception, the [claimants] must show that it is certain that their claim will be denied on appeal, not merely that they doubt an appeal will result in a different decision" *Smith v. Blue Cross & Blue Shield of Wisconsin*, 959

14

F.3d 655, 659 (7th Cir. 1992). The Plaintiff has failed to provide facts supporting his contention that he exhausted his administrative remedies, other than his lawyer's June 4, 2002 letter, which Plaintiff misconstrues as an appeal of the first application and, moreover, is one beyond the 60-day limit. Therefore, the Plaintiff waived objections to the Trustees' denial of his first application to the CTDU Fund and that matter is not properly before this Court and Defendant's Motion for Summary Judgment is granted. *See Lindemann v. Mobil Oil Corp.*, 79 F.3d 647 (7th Cir. 1996) (upholding district court's decision to require claimant to exhaust administrative remedies before bringing suit and the district court's granting summary judgment to the defendant for plaintiff's failure to exhaust administrative remedies); *Bahnaman v. Lucent Technologies, Inc.*, 219 F.Supp.2d 921, 925 (N.D. Ill. 2002) (stating that a plan participant must exhaust administrative remedies before suing the benefits plan ).

C.     **The CTDU's Calculation of the Partial Pension after the Second Application**

The next issue is whether CTDU lawfully calculated Plaintiff's Partial Pension following his second application to the Fund. As stated previously, the $29.00 monthly benefit determined by the CTDU Fund represented that particular fund's portion– a Partial Pension– of a reciprocal pension based on Plaintiff's 4.3 years of service. However, in determining the amount of a Partial Pension, the CTDU Fund relies on the terms and conditions of the CTDU Plan, not the Reciprocal Agreement itself. The Current CTDU Plan provides as follows: "[i]f a Participant receives a Partial Pension, his benefit will be based on the accrual rate in effect when he left employment covered by this Fund." (Current Plan at Appendix C, § C1, page 71). The 1972 Plan that Plaintiff worked under when he was with the CTDU Fund provides that, "[t]he amount

15

of the Normal Pension shall be... (I) $200.00 per month for Employees retiring from Covered Employment on or after July 1, 1972." (1972 Plan at Article II, § 2.03(I), pp.40-41).

Plaintiff argues that the CDTU Plan should calculate his Partial Pension at the level in the current Plan (using a multiplier of $1,055.00) rather than the $200 multiplier in the 1972 Plan. Plaintiff maintains that the Defendant's actions have amounted to a forfeiture of the benefits to which Plaintiff is entitled. For the reasons below, the Court finds that the Defendant's actions were lawful.

ERISA's non-forfeitability provisions do not guarantee the amount of the benefit to be received or the calculating method in determining the benefit. Rather, ERISA defines a "nonforfeitable" pension benefit or right as "a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan." *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 511 (1981). "Similarly, the statutory definition of 'nonforfeitable' assures that an employee's claim to the protected benefit is legally enforceable, but it does not guarantee a particular *amount* or a method for calculating the benefit." *Id.* at 512. (emphasis added). *See also Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 330 (7th Cir. 2000) (stating that an ERISA plan is a contract).

Here, the contract between Plaintiff and Defendant states clearly and unambiguously on its face that, "[i]f a Participant receives a Partial Pension, his benefit will be based on the accrual rate in effect when he left employment covered by this Fund." (Current Plan at Appendix C, § C1, page 71). Furthermore, the 1972 Plan that Plaintiff worked under when he was with the CTDU Fund provides that, "[t]he amount of the Normal Pension shall be... (I) $200.00 per

16

month for Employees retiring from Covered Employment on or after July 1, 1972." (1972 Plan at Article II, § 2.03(I), pp.40-41). Plaintiff left Covered Employment under the CTDU Fund in 1973 when he changed jobs. At that point, he stopped accruing benefits with the CTDU Fund because there was no employer party to a CBA with the CTDU Fund that was contributing on Plaintiff's behalf to the CTDU Fund. The 1968-1973 contributions on Plaintiff's behalf supported a pension at the accrual rate during that time, not one thirty years later after Plaintiff had worked for nearly twenty-six years with employers contributing to two other plans, the 703 and the Suburban Plan.

The actuarial balance of a pension plan is disrupted when courts force plan trustees to pay benefits outside the written terms of the program. *Cummings by Techmeier v. Briggs & Stratton Retirement Plan*, 797 F.2d 383, 389 (7th Cir. 1986). This "potentially jeopardizes the pension rights of others legitimately entitled to receive them." *Id.* "The actuarial soundness of pension funds is, absent extraordinary circumstances, too important to permit trustees to obligate the fund to pay pensions to persons not entitled to them under the express terms of the pension plan." *Id.* (citations omitted) Given this, the Trustees' interpretation of their own Plan in awarding Plaintiff a Partial Pension of $29.00 a month was a reasonable one and was lawful under ERISA. The Trustees exercised the judgment afforded them that permitted them to ". . . . by majority action . . . to construe, interpret, and apply the provisions of this restated Agreement and the terms and regulations of the Plan, and to determine eligibility for benefits." (Trust Agreement Article III, § 17). Therefore, this Court finds that Defendant acted lawfully in determining the Partial Pension benefit of $29.00 per month.

17

## D. The CTDU's Non-Payment of Interest to Plaintiff

The Plaintiff seeks interest for the pension payments it says were due from the CTDU Fund, effective January 1, 2000, for the Plaintiff's first application to the Fund for a pension. These pension payments putatively would be the "30-and-Out Pension" and the "Partial Pension" for which the Plaintiff applied in November 1999. Both sides make arguments and cite case law and statutory provisions purporting to support their positions on this issue, though this Court need not evaluate them.

As stated above in Part II.A of this Opinion, the Plaintiff was not entitled to a 30-and-Out Pension. Secondly, the Plaintiff waived objection to the Defendant's denial of that initial application for a Partial Pension and failed to exhaust his administrative remedies. *See supra* Part II.B (finding that Plaintiff waived such objections by not appealing within 60 days as provided by the Plan and granting summary judgment for failing to exhaust administrative remedies). Because the Court has granted Defendant Summary Judgment on both the 30-and-Out Pension as well as the Partial Pension questions, the issue of interest is moot.

## CONCLUSION

There is no evidence to support Plaintiff's claim the CTDU Fund wrongly denied the Plaintiff's request for a 30-and-Out Pension or that the CTDU Fund violated the law in calculating and awarding the Plaintiff a Partial Pension of $29.00 using the multiplier rate in effect when Plaintiff left employment under the CTDU Fund. The 30-and-Out Pension's requirements– requirements that the Plaintiff failed to meet– did not violate the Reciprocal Agreement or ERISA. Even under ERISA, the CTDU Fund's denial of a 30-and-Out Pension to the Plaintiff was not arbitrary and capricious, and the Defendant acted reasonably in denying the

18

request. The Defendant acted lawfully in its calculation of the Partial Pension. Additionally, the Plaintiff waived objections to the Defendant's initial denial of Plaintiff's application for a Partial Pension and failed to exhaust administrative remedies, a necessary step to bring suit in the first place. The final issue, interest payments, was rendered moot by the outcome of the preceding issues. For the foregoing reasons, the Defendant CTDU Fund's Motion for Summary Judgment [#26-1] is granted. This is a final and appealable order, terminating the case.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated: October 22, 2004